UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

FRANCISCO LEDEZMA,            )
                              )
    Plaintiff,                )
                              )
vs.                           )         6:07-CV-00913-LSC
                              )
RIVER BIRCH HOMES, LLC,       )
                              )
    Defendant.                )

MEMORANDUM OF OPINION

I.     Introduction.

      The Court has for consideration a motion for summary judgment, which was filed by defendant River Birch Homes, LLC ("River Birch"), on May 1, 2008.  (Doc. 32.)  Plaintiff Francisco Ledezma has sued River Birch for fostering a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981"); failure to pay overtime in accordance with the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); and retaliatory discharge

under Alabama Code § 25-5-11.1.[1]  (Doc. 1.)  River Birch has moved for summary judgment on all of Plaintiff's claims.  The issues raised in Defendant's motion have been briefed by both parties[2] and are now ripe for review.  Upon full consideration of the legal arguments and evidence[3] presented, River Birch's motion for summary judgment will be granted in all respects.

II.   Facts.[4]

Plaintiff Francisco Ledezma ("Ledezma"), a native of Mexico, is a

---

[1] Plaintiff's workers' compensation claim was dismissed without prejudice, at Plaintiff's request, on August 21, 2007.  (Doc. 15.)

[2] The parties filed various motions to strike the other side's memorandum or motion for purported failures to follow this Court's Uniform Initial Order.  While the Court does find that each side violated the page limit for initial and response briefs, the  motions to strike (Docs. 36, 42, 43) will be denied in this instance.

[3] Plaintiff filed a motion to strike all or portions of the Declaration of Brad Mikels as hearsay. (Doc. 38.)  Plaintiff's motion to strike will be denied.  The potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process.  Evidence that could not be reduced to admissible form at trial was rejected by this Court when making its final decision on Defendant's summary judgment motion.  *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999).

[4] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

resident non-U.S. citizen who has lived in Russellville, Alabama, since 1996. River Birch, a company located in Hackleburg, Alabama, manufactures mobile homes. Ledezma was initially hired by River Birch on February 29, 2000, to work in the framing department. He resigned this position on February 27, 2003.

Plaintiff returned to work for River Birch on September 24, 2004. Jeff "Bo" Robinson ("Robinson") was Ledezma's supervisor. On July 25, 2005, Plaintiff received a written warning for attendance, which stated it was the "2nd written warning in 2 weeks for Attendance," and "Next written one will be possible termination." On October 31, 2005, Ledezma received a written warning for being absent from work for three days without a doctor's excuse, but his employment was not terminated.

Plaintiff visited Dr. Rizk Moutagaly for back pain on November 2, 2005. He testified that at the time of the visit, his back had been hurting for about a week. It is undisputed, however, that Ledezma did not report his back injury, nor his contention that he hurt his back at work, to anyone at River Birch in October or November.

On December 5, 2005, Plaintiff left work early and attempted to see

Dr. Moutagaly again for his back pain. Because the doctor was not available, Ledezma was given an excuse, which stated he could resume work on December 6, 2005. Ledezma returned to Dr. Moutagaly's office on December 6, and did not go to work. After examining Plaintiff, Dr. Moutagaly gave him a work excuse and release to return to light duty on December 7, 2005.

On December 7, Plaintiff met with Robinson and Barry Hall ("Hall"), the safety coordinator for River Birch. Ledezma presented his documentation from Dr. Moutagaly and demanded that River Birch pay for his medicine. Hall told Plaintiff that River Birch would not pay for medicine prescribed by a personal physician. Robinson said he would send Ledezma to the company's doctor at the Hamilton Family Medical Clinic. Plaintiff testified an argument ensued, however, when Robinson and Hall prepared the report for the company's workers' compensation insurance carrier and wrote that Ledezma hurt his back on Monday, December 5, 2005. Plaintiff tried to get Robinson and Hall to change the date to October. Ledezma says that because the date of his alleged work injury was not changed to October on the OSHA report and workers' compensation report, he refused to go to the company's doctor and left the River Birch premises.

When Ledezma did not report to work at his regular hourly shift on December 8, 2005, Robinson terminated Ledezma's employment for "Excessive absenteeism; written warnings." No one at River Birch told Plaintiff why he was terminated. Ledezma filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 14, 2006.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support

of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

    A.   Hostile Work Environment.

Plaintiff contends that he was subjected to a hostile work environment while employed by River Birch. Defendant maintains that it is entitled to

summary judgment because (1) Plaintiff failed to properly exhaust his administrative remedies by timely filing an EEOC charge with allegations of national origin harassment; and (2) Plaintiff has not presented sufficient evidence to establish a hostile environment claim. (Doc. 33 at 10-19.)

As a preliminary matter, the Court notes that the Complaint includes a claim for hostile work environment under both Title VII and § 1981. Failure to exhaust administrative remedies does not preclude a § 1981 claim if, in fact, Plaintiff is pursuing a § 1981 claim. However, Ledezma does not mention § 1981 in his response memorandum or the parties' joint status report (Doc. 31), which was to include "each plaintiff's claims, including each legal theory relied upon and the factual allegations he/she expects to prove in support of each legal theory" (Doc. 16 ¶ 7). Moreover, throughout Plaintiff's argument in opposition to summary judgment, Ledezma refers only to his Mexican national origin and does not argue that he was discriminated against because of his Hispanic race, an element required to establish liability under § 1981. Accordingly, Plaintiff's § 1981 claim will be dismissed as abandoned. *See, e.g., Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument

if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument).

In order to proceed with a Title VII claim for hostile work environment, a plaintiff must file an EEOC charge "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1), *quoted in Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). In support of his hostile environment charge, Plaintiff references events that occurred during both periods of his employment with River Birch. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). "The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." *Id*. However, if subsequent acts occur over 180 days after previous acts, and they have "no relation to the [acts that are over 180 days old], or for some other reason, such as intervening action by the employer,

[were] no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the [subsequent acts.]" *Id.* at 118.

In this case, Ledezma worked for River Birch from February 29, 2000, to February 27, 2003. He did not file an EEOC charge related to any acts that occurred during that period of time. Plaintiff returned to River Birch on September 24, 2004. At that point, over 180 days had passed since any alleged bad acts occurred during his previous employment, and the statute of limitations had run for any Title VII national origin claim related to that employment. It follows then, that any incidents occurring during the second period of employment would constitute a separate "unlawful employment practice" from any alleged unlawful practice that may have occurred during the first period of employment. A plaintiff cannot make years-old actions timely under the 180-day rule by returning to work for his previous employer. Therefore, in making a determination on Plaintiff's hostile environment claim, this Court is limited to events that occurred during Ledezma's second period of employment.

"[A] plaintiff wishing to establish a hostile work environment claim [must] show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Here, River Birch disputes the third, fourth, and fifth elements.

In his response memorandum, Ledezma devotes one paragraph to his argument that the harassment he suffered was based on his national origin (Mexican) and was sufficiently severe or pervasive to alter the terms and conditions of his employment. (Doc. 39 at 25-26.) Without substantial discussion, he cites to portions of his deposition testimony to support his claim. These citations include the following incidents: (1) Barry Hall said things like, "they were going to take me back to Mexico," during Ledezma's first period of employment. However, Plaintiff cannot remember if Hall said

anything discriminatory the second time he worked for River Birch (Ledezma Dep. at 96-100); (2) "James," a forklift driver, called Plaintiff a "wetback" at some point, and got upset when he saw Ledezma teaching his son to paint around November 2005.  Plaintiff could not say exactly what James said to him at that point, but he claims James "always said go back to Mexico," and pushed him to try to start a fight.  When the son was assigned elsewhere, James generally left Ledezma alone.  However, on another occasion, James told Plaintiff that if he dropped a beam of steal, he would beat him in the head (*id*. at 101-06); (3) sometime in 2004, John Stidham, a coworker, threatened to hit him twice.  Plaintiff believed Stidham was upset the company let Ledezma return to work after he left River Birch but did not take Stidham's brother back (*id*. at 107-10); (4) a tall lady with dark hair who was "second after" supervisor Stacy Brown made a comment in front of Ledezma while he was changing a flat tire that "Mexicans come here only to steal the benefits of all of the Americans."  The woman later approached Plaintiff and apologized and said she did not want him to feel bad.  Ledezma does not identify when this event occurred (*id*. at 114-15); (5) once, Francisco Melecio asked Plaintiff to purchase Gatorade bottles on a hot day

but gave it to others for free (*id.* at 117-24); (6) Jim Hanby, another coworker, called him names like "wetback," "Mexican," and "the intimate part of a woman," but Ledezma does not detail how often or during which period of employment the name-calling occurred. Rather, Plaintiff says he ignored Hanby because they were "not big offenses" to him (*id.* at 124-25); and (7) Bo Robinson also called Ledezma the "intimate part of a woman" and a "dumb ass" (*id.* at 126).

Some of these events are not definitively alleged to have occurred during the relevant time period, or Plaintiff's second term of employment with River Birch. A number of these incidents—including some of the insults, Stidham's threats, and Melecio asking Ledezma to pay for Gatorade on one occasion—have not been shown to be "based on" Plaintiff's Mexican origin. It is also unclear whether the worker named "James" pushed Plaintiff, and later threatened him if he dropped a beam, because of Ledezma's Mexican origin. Ledezma could not recall what James said when he pushed him, and there is no allegation any epithets were used at the time of the threat. The Court must determine, then, whether the acts that occurred during the relevant time period, and that have been adequately shown to be "based on"

Plaintiff's national origin, are sufficiently severe or pervasive to constitute a hostile work environment.

"Determining whether the harassment was sufficiently severe or pervasive involves 'both an objective and subjective component.'" *McCann v. Tillman,* 526 F.3d 1370, 2008 WL 1991172 at *7 (11th Cir. 2008) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)). "In determining the objective element, a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotations omitted). "The employer will be held liable if it fails to discover a hostile atmosphere and to take appropriate remedial steps." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995) (citing *Busby v. City of Orlando*, 931 F.2d 764, 785 (11th Cir. 1991)). For employment of over one year, Plaintiff has presented a few instances where he was called derogatory names based on his Mexican origin. His testimony is vague regarding how many times this name calling took place, but with regard to one of the alleged perpetrators,

Ledezma testified that the epithets were "not big offenses" and he ignored them. He has also presented evidence that an unnamed woman that he believes was "second after" a supervisor, said something offensive regarding Mexican people in his presence and later apologized. Even if this Court also considers the one threat and one push Ledezma suffered at the hands of a forklift driver who had used epithets previously, the incidents as a whole were neither frequent nor severe. A reasonable jury could not conclude, based on the evidence presented, that Ledezma's workplace was "permeated with 'discriminatory intimidation, ridicule, and insult.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). River Birch is therefore entitled to summary judgment on Plaintiff's Title VII hostile environment claim.

    B.    Overtime Pay.

Plaintiff's Complaint also includes a claim that River Birch violated the overtime provisions of the FLSA and failed to properly compensate him for all work performed. In his response memorandum, Ledezma contends that he was paid below the effective minimum wage during periods of his employment, and he worked a "significant amount of overtime," for which

he did not receive proper compensation. (Doc. 39 at 29-32.) Defendant argues that Plaintiff never made a claim for failure to pay minimum wage in the Complaint, and does not have sufficient evidence to support his allegations.

River Birch is correct that Plaintiff's Complaint does not mention any purported failure to pay effective minimum wage. A plaintiff cannot add a new legal claim in response to summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004); *see also Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006). Therefore, this claim is not properly before the Court. However, even if Plaintiff's minimum wage claim were adequately pled in the Complaint, there is insufficient evidence in the record to convince a reasonable jury that Ledezma received improper payments—hourly or overtime—under the FLSA.

Plaintiff attempts to show that he was paid less than the effective minimum wage of $5.15 per hour through two pay stubs, dated November 17, 2005, and December 15, 2005. Without citation to any legal precedent, he contends that when "gross earnings" are divided by "gross hours," his "equivalent hourly rate" for these two paychecks is $4.96 and $4.43,

respectively. (Doc. 39 at 29.) However, River Birch has proffered undisputed evidence regarding the manner in which their "attendance bonus policy" operated. A closer look at Plaintiff's two paychecks shows that "gross hours" is not a phrase used on the earnings statement—and with good reason. The "gross hours" Plaintiff attempts to use in his calculation of his effective minimum wage is the total of his regular hours worked and the number of hours for which he *lost* his attendance bonus. For example, looking at the November 17, 2005, statement, Plaintiff claims in his response memorandum that he should be paid for 69.00 "gross hours," but his pay statement shows instead that he worked 37.00 regular hours at a rate of 11.7500, but 32.00 hours were deducted at a rate of -2.9000 under the "attendance bonus" column because he did not earn the attendance bonus for those hours for that pay period. Because Plaintiff has not produced any evidence showing he actually worked the amount of hours he now contends are "gross hours" on his earnings statements, he has not shown that River Birch paid him less than minimum wage.

Similarly, with regard to his claim for unpaid overtime, Plaintiff has not presented any evidence of days or weeks that he worked overtime and was

not paid adequately under the FLSA.  Rather, Plaintiff again points to "gross hours" in his miscalculations of overtime paid.  (Doc. 39 at 31.)  In one paycheck referenced, November 17, 2005, Ledezma had not worked any overtime.  In the other two earnings statements, Plaintiff was paid at a rate of $17.625 per overtime hour worked.  He has not established that this rate violates the FLSA overtime provisions, nor has Ledezma argued that River Birch's attendance bonus policy itself violates the FLSA.  These claims will therefore be dismissed.

> C. Retaliatory Discharge.

Finally, Ledezma contends that River Birch is liable for retaliatory discharge under Alabama Code § 25-5-11.1.  Plaintiff concedes that in order "to establish a prima facie case of retaliatory discharge[, he] must show: 1) an employment relationship, 2) an on-the-job injury, 3) knowledge on the part of the employer of the on-the-job injury, and 4) subsequent termination of employment based solely upon the employee's on-the-job injury *and the filing of a workers' compensation claim*."  (Doc. 39 at 32-33 (quoting *Ala. Power Co. v. Aldridge*, 854 So. 2d 554, 563 (Ala. 2002) (emphasis added).)  In this case, however, Ledezma argues that he was fired because he *refused*

*to file* a workers' compensation claim.  (*Id*. at 33-34, 37.)

In some instances, the Alabama Supreme Court has accepted a plaintiff's claims of retaliatory discharge when he or she is able to show only that "steps [were taken] toward filing a workers' compensation claim." *See Hexcel Decatur, Inc. v. Vickers*, 908 So. 2d 237, 242 n.5 (Ala. 2005 (quoting *Ex parte Usrey*, 777 So. 2d 66, 69 (Ala. 2000)).  Assuming Ledezma's situation qualifies, and that he has established a prima facie case of retaliatory discharge under § 25-5-11.1, Plaintiff is nonetheless required to "show that he was fired *solely* because of his workers' compensation claim." *Ala. Power Co.*, 854 So. 2d at 564 (emphasis added).  "[I]f there is uncontradicted evidence of an independently sufficient basis for the discharge then the defendant is entitled to a judgment as a matter of law." *Id*. at 568.

It is undisputed that Ledezma received a written warning for attendance on July 25, 2005, which stated it was the "2nd written warning in 2 weeks for Attendance," and "Next written one will be possible termination."  When he received another written warning for being absent from work for three days without a doctor's excuse on October 31, 2005, Plaintiff's employment was yet not terminated.  The evidence shows that

after Ledezma walked away from River Birch's premises[5] on December 7, 2005, despite having presented a doctor's note saying he could return to light work duty, and then failed to show up for his scheduled shift on December 8, 2005, he was terminated for "Excessive absenteeism; written warnings."  Because this evidence is uncontradicted and provides an independently sufficient basis for Plaintiff's discharge, summary judgment will be granted to River Birch on Ledezma's retaliatory discharge claim.

V.   Conclusion.

For the reasons set forth above, Defendant's motion for summary judgment is due to be granted in all respects.  A separate order will be entered.

Done this 3rd day of September 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**

---

[5] Ledezma testified that he believed at that time that he was going to be fired (Ledezma Dep. at 87), but he does not testify that he was told he was fired before he left.  Rather, he "just decided to leave."  (*Id*. at 83.)